UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

CASE NO.: 22-10162
District Court Docket No.: 21-cv-80646-DMM

_____

VANESSA SUTTON,

Appellant,

vs.

WAL-MART STORES EAST, LP,

Appellee.

_____

APPEAL TAKEN FROM
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**APPELLANT'S INITIAL BRIEF**

| | |
|---|---|
| RUBENSTEIN LAW, P.A. | PHILIP D. PARRISH, P.A. |
| *Counsel for Plaintiff/Appellant* | *Lead Counsel for Appellant* |
| 250 S. Australian Avenue, Suite 1000 | 7301 SW 57th Court, Suite 430 |
| W. Palm Beach, FL   33401 | Miami, FL   33143 |
| Tel. 305-661-6000 | Tel. 305-670-5550 |
| Fax 305-670-7555 | Fax 305-670-5552 |
| Email:  phunt@rubensteinlaw.com | Email: phil@parrishappeals.com |

By:  */s/ Peter Hunt*             By:   */s/ Philip D. Parrish*
         Peter Hunt                        Philip D. Parrish
         Florida Bar No. 107350            Florida Bar No. 541877

## **CERTIFICATE OF INTERESTED PERSONS**

**TRIAL JUDGES:**

Matthewman, William, *U.S. Magistrate Judge*

Middlebrooks, Donald M., *United States District Judge*

**ATTORNEYS:**

DiBello, Darin A., *Counsel for Defendant*

Fasi & DiBello, P.A., *Counsel for Defendant*

Feuer, Aaron S., *Counsel for Plaintiff*

Hunt, Peter R., *Counsel for Plaintiff*

Parrish, Philip D., *Counsel for Plaintiff/Appellant*

Philip D. Parrish, P.A., *Counsel for Plaintiff/Appellant*

Rubenstein Law, *Counsel for Plaintiff*

Woodstock, Spencer, *Counsel for Defendant*

**PARTIES:**

Vanessa Sutton, *Appellant/Plaintiff*

Wal-Mart Stores East, LP, *Appellee/Defendant*


*/s/ Philip D. Parrish*
Philip D. Parrish, Esq.
FBN: 541877

C-1

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant believes that oral argument will benefit the Court because summary judgment rulings in negligence cases are necessarily fact specific, and summary judgment should rarely be granted in negligence cases precisely because of "the elusive nature of the concept of negligence. . . ."  *Harvey v. Great Atlantic and Pacific Tea Co.*, 388 F.2d 123 (5th Cir. 1968).   That concept is explored best via oral argument.

## CERTIFICATE OF TYPE SIZE AND FONT

Undersigned counsel certifies that the size and style of type used in this brief is 14-point Times New Roman.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

CERTIFICATE OF TYPE SIZE AND FONT ........................................................ i

TABLE OF CONTENTS................................................................................ ii

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF JURISDICTION...............................................................1

ISSUES PRESENTED: ..............................................................................1

      1.    Whether the Summary Judgment Must Be Reversed Because The Evidence Presents Genuine Issues Of Material Fact That Wal-Mart Had Constructive Notice Of The Crushed Grape On Its Floor, Due To (1) The Deteriorated Appearance Of The Smashed Grape And Surrounding Area; (2) The Lack Of Any Inspection By Wal-Mart Employees For Up To An Hour Before The Incident; (3) The Presence Of Nearby Employees Who Should Have, But Did Not, Detect The Dangerous Condition; and (4) The Existence and Violation of Wal-Mart's Written Policy to Place Mats on the Floor Below the Grape Bins Due to the Tendency of Grapes to Fall to the Floor; and Because The District Court Impermissibly Applied A Florida Procedural Rule Against Stacking Inferences Which This Court Has Rejected? .........................1

STATEMENT OF THE CASE AND FACTS .........................................1

STANDARD OF REVIEW .......................................................................9

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ..........................................................................................13

I.   THE SUMMARY JUDGMENT MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTS GENUINE ISSUES OF MATERIAL FACT THAT WAL-MART HAD CONSTRUCTIVE NOTICE OF THE CRUSHED GRAPE ON ITS FLOOR, DUE TO (1) THE DETERIORATED APPEARANCE OF THE SMASHED GRAPE AND SURROUNDING AREA; (2) THE LACK OF ANY INSPECTION BY WAL-MART EMPLOYEES FOR UP TO AN HOUR BEFORE THE INCIDENT; (3) THE PRESENCE OF NEARBY EMPLOYEES WHO SHOULD HAVE, BUT DID NOT, DETECT THE DANGEROUS CONDITION; AND (4) THE EXISTENCE AND VIOLATION OF WAL-MART'S WRITTEN POLICY TO PLACE MATS ON THE FLOOR BELOW THE GRAPE BINS DUE TO THE TENDENCY OF GRAPES TO FALL TO THE FLOOR; AND BECAUSE THE DISTRICT COURT IMPERMISSIBLY APPLIED A FLORIDA PROCEDURAL RULE AGAINST STACKING INFERENCES WHICH THIS COURT HAS REJECTED ..........................................13

CONCLUSION ......................................................................................36

CERTIFICATE OF COMPLIANCE ......................................................36

CERTIFICATE OF SERVICE ..............................................................36

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................12

*Aponte v. Royal Caribbean Cruise Lines, Ltd.*,
   739 Fed.Appx. 531 (11th Cir. 2018) ..........................................................27

*Berbridge v. Sams East, Inc.*,
   728 Fed.Appx. 929 (11th Cir. 2018) ..........................................................28

*Berman v. Target*,
   2016 WL 4531738 (S.D. Fla. 2016) ..........................................................25

*Bonner v. City of Prichard, Ala.*,
   661 F. 2d 1206 (11th Cir. 1981) .................................................................10

*Brady v. Carnival Corp.*,
   __ F.4th ___, 2022 WL 1420869 (11th Cir. 2022) .................................. 12, 35, 36

*Brooks v. Phillips Watts Enter., Inc.*,
   560 So.2d 339 (Fla. 1st DCA 1990) ...........................................................14

*Broz v. Winn-Dixie Stores, Inc.*,
   546 So.2d 83 (Fla. 3d DCA 1989) ..............................................................26

*Carroll v. Carnival Corp.*,
   955 F.3d 1260 (11th Cir. 2020) ............................................................ passim

*Cisneros v. Costco Wholesale Corp.*,
   754 So.2d 819 (Fla. 3d DCA 2000) ............................................................19

*Clinkscales v. Chevron USA, Inc.*,
   831 F.2d 1565 (11th Cir. 1987) ..................................................................10

*Colon v. Outback Steakhouse of Florida, Inc*,
   721 So.2d 769 (Fla. 3d DCA 1998) ............................................................31

*Croley v. Matson Navigation Co.*,
   434 F.2d 73 (5th Cir. 1970) ........................................................................10

*Daniels v. Twin Oaks Nursing Home*,
    692 F.2d 1321 (11th Cir. 1982) ..................................................................... 28, 29

*Delgado v. Laundromax, Inc.*,
    65 So.3d 1087 (Fla. 3d DCA 2011) ............................................................. 22, 33

*Doudeau v. Target Corp.*,
    572 Fed.Appx. 970 (11th Cir. 2014) .......................................................... 27, 34

*Encarnacion v. Lifemark Hospitals of Florida*,
    211 So.3d 275 (Fla. 3d DCA 2017) ............................................................ passim

*Feris v. Club Country of Fort Walton Beach, Inc.*,
    138 So.3d 531 (1st DCA 2014) ........................................................................ 34

*Garcia v. Wal-Mart Stores E., L.P.*,
    2015 WL 898582 (M.D. Fla. Mar. 3, 2015) .................................................... 20

*Gerard v. Eckerd Corp.*,
    895 So.2d 436 (Fla. 4th DCA 2005) ............................................................... 24

*Gonzalez v. Target Corp.*,
    2016 WL 2642103 (S.D. Fla. 2016) ................................................................ 19

*Goodman v. D.T.G. Operations*,
    2016 WL 759299 (S.D. Fla. 2016) .................................................................. 24

*Gross v. Southern Railway Co.*,
    414 F. 2d 292 (5th Cir. 1969) ......................................................................... 10

*Guevara v. NCL (Bahamas) Ltd.*,
    920 F.3d 710 (11th Cir. 2019) ......................................................... 12, 23, 36

*Harvey v. Great Atlantic and Pacific Tea Co.*,
    388 F.2d 123 (5th Cir. 1968) ........................................................................ i, 9

*Hill v. Ross Dress for Less, Inc.*,
    2014 WL 6190435 (S.D. Fla. 2014) ................................................................ 25

*James v. Target Corp.*,
    2015 WL 1197775 (S.D. Fla. 2015) ................................................................ 25

*Jenkins v. Brackin*,
   171 So.2d 589 (Fla. 2d DCA 1965)......................................................................23

*Kenz v. Miami-Dade County*,
   116 So.3d 461 (Fla. 3d DCA 2013).............................................................. 17, 34

*Little v. Publix Supermarkets, Inc.*,
   234 So.2d 132 (Fla. 4th DCA 1970) ..................................................................24

*Markowitz v. Helen Homes of Kendall Corp.*,
   826 So.2d 256 (Fla. 2002) ........................................................................... 26, 27

*McCarthy v. Broward College*,
   164 So.3d 78 (Fla. 4th DCA 2015)............................................................... 33, 34

*Miller v. Big C Trading, Inc.*,
   641 So.2d 911 (Fla. 3d DCA 1994).............................................................. 25, 26

*Montgomery v. Florida Jitney Jungle Stores, Inc.*,
   281 So.2d 302 (Fla. 1973) .............................................................. 14, 15, 19, 23

*Najeera v. Tropical Supermarket Corp.*,
   305 So.3d 639 (Fla. 3d DCA 2020)....................................................................19

*Newalk v. Florida Supermarkets*,
   610 So. 2d. 528 (Fla. 3d DCA 1992)...................................................................19

*Norman v. DCI Biologicals Dunedin, LLC*,
   301 So.3d 425 (Fla. 2d DCA 2020).............................................................. 19, 30

*Owens v. Publix Supermarkets, Inc.*,
   729 So.2d 449 (Fla. 5th DCA 1999) ........................................................... 13, 32

*Owens v. Publix Supermarkets, Inc.*,
   802 So.2d 315 (Fla. 2001) ..................................................................... passim

*Pembroke Lakes Mall Ltd. v. McGruder*,
   137 So.3d 418 (Fla. 4th DCA 2014) ..................................................................16

*Plott v. NCL America, LLC*,
   786 Fed.Appx. 199 (11th Cir. 2019) ..................................................................27

*Rubiano-Pagle v. Target Corp.*,
   2012 WL 13019198 (S.D. Fla. 2012) ....................................................24

*Seaberg v. Steak N'Shake Operations, Inc.*,
   697 Fed.Appx. 941 (11th Cir. 2017) ...................................................34

*Skipper v. Barnes Supermarket*,
   573 So.2d 411 (Fla. 1st DCA 1991) ....................................................20

*Skop v. City of Atlanta, GA.*,
   485 F.3d 1130 (11th Cir. 2007) ..........................................................11

*Soriano v. B & B Cash Grocery Stores, Inc.*,
   757 So.2d 514 (Fla. 4th DCA 1999) ...................................... 13, 14, 18

*Strickland v. Norfolk Southern Ry. Co.*,
   692 F.3d 1151 (11th Cir. 2012) ..........................................................10

*Teate v. Winn-Dixie Stores, Inc.*,
   524 So.2d 1060 (Fla. 3d DCA 1988) ...................................... 14, 24, 32

*Thomas v. NCL (Bahamas), Ltd.*,
   203 F.Supp.3d 1189 (S.D. Fla. 2016) ........................................ 24, 25

*Torres v. Wal-Mart Stores East, LP*,
   555 F.Supp.3d 1276 ...................................................................... 18, 19

*Wal-Mart Stores, Inc. v. King*,
   592 So.2d 705 (Fla. 5th DCA 1991) .......................................... 25, 26

*Williams v. Ryta Food Corp.*,
   301 So.3d 339 (Fla. 3d DCA 2020) ............................................ 19, 33, 34

*Wilson-Greene v. City of Miami*,
   208 So.3d 1271 (Fla. 3d DCA 2017) ................................. 31, 32, 33, 34

*Winn Dixie Stores, Inc. v. Guenther*,
   395 So.2d 244 (Fla. 3d DCA 1981) ....................................................20

*Winn Dixie Stores, Inc. v. Williams*,
   264 So.2d 862 (Fla. 3d DCA 1972) ....................................................24

*Woods v. Winn Dixie Stores, Inc.*,
  621 So. 2d 710 (Fla. 3d DCA 1993)............................................................ 20, 21

**Statutes**

28 U.S.C. §1291 ............................................................................................1

28 U.S.C. §1332 ............................................................................................1

Section 768.010, Fla. Stat. (2002).................................................................16

Section 768.0755, Fla. Stat ................................................................... passim

§768.0755(1)(a)(b) .......................................................................................17

**Rules**

Fed.R.Civ.P. 56 ........................................................................................8, 11

FRAP 32(a)(7)(B) .......................................................................................36

## STATEMENT OF JURISDICTION

The District Court had diversity jurisdiction pursuant to 28 U.S.C. §1332. This Court may properly exercise jurisdiction over the final summary judgment under 28 U.S.C. §1291.

## ISSUES PRESENTED:

1.    Whether the Summary Judgment Must Be Reversed Because The Evidence Presents Genuine Issues Of Material Fact That Wal-Mart Had Constructive Notice Of The Crushed Grape On Its Floor, Due To (1) The Deteriorated Appearance Of The Smashed Grape And Surrounding Area; (2) The Lack Of Any Inspection By Wal-Mart Employees For Up To An Hour Before The Incident; (3) The Presence Of Nearby Employees Who Should Have, But Did Not, Detect The Dangerous Condition; and (4) The Existence and Violation of Wal-Mart's Written Policy to Place Mats on the Floor Below the Grape Bins Due to the Tendency of Grapes to Fall to the Floor; and Because The District Court Impermissibly Applied A Florida Procedural Rule Against Stacking Inferences Which This Court Has Rejected?

## STATEMENT OF THE CASE AND FACTS

On August 23, 2018 Vanessa Sutton was shopping in the produce aisles of the grocery section of a West Palm Beach Wal-Mart Store.   At the time of the incident Ms. Sutton was a peer counselor at a local mental health facility. (DE 31-6, p. 21-22).   She was helping a peer counseling client of hers with her shopping.   (DE 31-6, p. 99).   Ms. Sutton suddenly slipped and fell on a mashed grape and grape juice, landing on her back and her left side.   (DE 31-6, p. 101).

A nearby Wal-Mart employee helped her get up as she was "a little stiff."   (DE 31-6, p. 101).   Her back and shoulder hurt.   (DE 31-6, p. 104).

Ms. Sutton felt dizzy and related that to a Wal-Mart employee she knew by name.   (DE 31-6, p. 102).   Wal-Mart had her fill out a Customer Incident Report.   (DE 31-6, p. 102).   After dropping off her client, she went to the hospital.   (DE 31-6, p. 102).   She sustained injuries to her left shoulder and back, ultimately having shoulder surgery.   (DE 31-6, p. 40).

The grape was "already smashed" when she slipped on it.   (DE 31-6, p. 103).   She described "a smashed grape that was dirty and the floor was gritty." (DE 31-6, p. 106). When asked how she knew the grape was already smashed, she said "Cause dirt was in it" and she saw a track mark.   (DE 31-6, p. 107). She reasoned that the grape "must have been there awhile – if I saw a track mark," adding "well, a buggy must have went through it or somebody went through it before I got there."   (DE 31-6, p. 108).

The track mark went through the grape and grape juice.   (DE 31-6, p. 109).   Regarding the footprint she testified:

Q.    Okay.   So did you see any footprints in the grape and liquid?

A.    I saw footprints but I didn't know whose footprints they were. It must have been mine, cause I'm the one that slipped and fell.   I don't know who else had went through the – through it.   That's something I don't know, you know that's a unknown.

Q.   So you're saying and – you're saying you believe that the footprint you saw in the liquid or grape was your footprint because you slipped and fell on it, correct?

A.   That's one possibility.   Another possibility it could have been – could have been somebody else's footprint too.

Q.   But you don't know.

A.   You don't know either.

(DE 31-6, p. 110).   She did not land on top of the grape when she fell.   (DE 31-6, p. 122).

The record contains eight photographs of the floor and/or the smashed grape.   The grape is seen in two pieces photographed on a paper towel.   (DE 41-3, p. 1-8).   The photographs of the floor clearly depict a track mark through an area of apparently dried liquid.   (DE 41-3, p. 2-7 of 8).   Here is a photograph of the two pieces of smashed grape:



(DE 41-3, p. 1 of 8).

Here is a photograph of the dried grape juice with a streak through it:



WALMART/Sutton 0626

(DE 41-3, p. 2 of 8).

There was supposed to be a mat where Ms. Sutton fell.    Wal-Mart safety employee Kevin Fookes testified about Wal-Mart's policies for having floor mats in the produce section, especially near the grapes:

A.    Well, there is a mist that comes off onto the produce and those mats are supposed to, you know, in case something drops that you don't slip or you slip on water or whatever, so the mats are there, you know, for fridge.

(DE 41-4, p. 7 of 36).    The Wal-Mart "Department of Safety Solutions" policy for the produce section instructs the employees to "place a mat in front of small loose fruits such as grapes and cherries."    (DE 41-5).    As Mr. Fookes testified:

Q.    . . . Do you know if Wal-Mart has a policy in place to put mats in your grapes and cherries?

A.    I believe so, yes, **especially the grapes**.

Q.    Why is that?

A.    In case, you know, something never slips out of one of those, because everybody is always putting their hands in there, you know, in case that slips out or something.

(DE 41-4, p. 10 of 36).    (Emphasis added).

Fookes acknowledged that it is Wal-Mart's policy to place mats in front of the grapes.    (*Id.*)    He testified that it's "just logical" there should be mats in front of the grapes because they have a tendency to fall off on to the floor.    (DE 41-4, p. 11 of 36).    When shown pictures of the incident scene (DE 41-3) he conceded there were no mats on the floor.    (DE 41-4, p. 13 of 36).    He also conceded that the cement floor is polished, not like the cement outside on a sidewalk.    (DE 41-4, p. 14 of 36).    When asked if a grape on the floor is a

dangerous condition, he testified "of course" and when asked if he would pick it up he replied "Damn right."   (DE 41-4, p. 17 of 36).

Wal-Mart employees are trained to always be looking out for hazards to protect the customers.   (DE 41-4, p. 17 of 36).   He conceded that employees are in a better position than customers to notice things that are spilled or dropped on the floor.   (DE 41-4, p. 18 of 36).   Customers expect the floor to be clean. (DE 41-4, p. 18 of 36).

Wal-Mart has safety sweeps but there is no timeline; they are done randomly throughout the day.   (DE 44-1, p. 6 of 35; Nevin's Depo., p. 14). Wal-Mart has a motto regarding transient substances which is "don't pass it up, pick it up." (DE 44-1, p. 5 of 35; Depo., p. 13).

### Course of Proceedings Below

Ms. Sutton commenced her action in the Circuit Court of the Fifteen Judicial Circuit in and for Palm Beach County, Florida on December 28, 2020. (DE 1-1).   She filed her Amended Complaint in state court on February 12, 2021.   (DE 1-6, p. 37-40 of 72).

Wal-Mart filed its Notice of Removal to the United States District Court for the Southern District of Florida, West Palm Beach Division, on April 2, 2021.   (DE 1).

Following discovery, Wal-Mart moved for summary judgment erroneously asserting that the record is devoid of any evidence that Wal-Mart had actual or constructive knowledge of the presence of the grape and/or grape juice on its floor for a sufficient time to take corrective action.   (DE 30).

Plaintiff filed her response (DE 41) attaching eight photographs of the foreign substance.   (DE 41-3).   Plaintiff also highlighted the testimony related above regarding (1) the dirty and deteriorated condition of the grape; (2)   the failure to comply with Wal-Mart policy of placing a mat below the grape bin; and (3) the video (DE 31-2) which Wal-Mart produced which captured over an hour before the incident, and failed to reveal (a) any Wal-Mart inspection of the area, or (b) any customer dropping a grape within that hour.   (DE 41, p. 2).

The video begins at 1:30 p.m. and depicts the Plaintiff slipping and falling in the grape aisle of the produce section at 2:45:21 p.m.   (*Id.*)   Prior to that time, the video captured two potential sources for the grape to have fallen. First, a shopper was near that aisle – although apparently shopping in the salad section -- at 2:21:47 p.m. roughly 24 minutes before Ms. Sutton's incident. (*Id.*)   Another shopper stopped in the grape section at 1:56:45-55 p.m. roughly 49 minutes before the fall, and appears to pick up something and place it on her cart.   The actual floor where the incident occurred, however, is not visible in

the video as the grapes are displayed on the opposite side of the aisle from the camera angle.   (*Id*.)

Regarding inspection by Wal-Mart employees, the video (DE 31-2) demonstrates that the last time a Wal-Mart employee walked past the aisle was at 2:35:22 p.m. about 10 minutes before the fall and that the Wal-Mart employee did not look at the ground or toward the grape bin, and his view of the grape section was blocked by another customer with a cart.   (*Id*.)   Roughly 40 minutes before the fall, at 2:04:52, a Wal-Mart associate pushed a cart laden with boxes into the aisle and appeared to rearrange something in one bin (it is unknown whether it was the grape bin).   His view was blocked by the boxes in his cart, and he did not appear to make an inspection of the floor.

## The Summary Judgment Order

The district court did not hold a hearing on Defendant's Motion for Summary Judgment.   The district court's six-page Order granting Wal-Mart's Motion for Summary Judgment failed to view the evidence in the light most favorable to the Plaintiff; instead, it viewed the evidence in the light most favorable to the movant, in violation of Fed.R.Civ.P. 56. (DE 54).   First, the Order makes no reference at all to the eight photographs of the foreign substance at issue!   Second, the district court's Order erroneously relied upon Florida procedural law about inference stacking, which does not apply to motions for

8

summary judgment filed in federal court.   Third, even if the inference stacking procedural rule were in play, the district court improperly applied it because Plaintiff's theory of liability and evidence of constructive notice requires no inference stacking.   Fourth, the district court improperly ruled that the failure of Wal-Mart's nearby employees to see the smashed grape and grape juice was not evidence of constructive notice.   Last, the district court rejected Plaintiff's argument that the condition occurred with frequency because Wal-Mart has a policy of placing mats under the grape bin.

The Plaintiff timely appeals from the district court's error-riddled order.

## STANDARD OF REVIEW

This Court reviews a District Court's grant of summary judgment *de novo*, considering the facts and drawing reasonable inferences in the light most favorable to the non-moving party.   *Carroll v. Carnival Corp*., 955 F.3d 1260, 1263 (11th Cir. 2020).

Personal injury cases should rarely be disposed of by summary judgment due to "the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all circumstances of the case." *Harvey v. Great Atlantic and Pacific Tea Company*, 388 F.2d 123 (5th Cir.

1968)[1]; *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting evidence, as it is in other kinds of litigation."); *Gross v. Southern Railway Co.*, 414 F. 2d 292 (5th Cir. 1969) (generally, issues of negligence, contributory negligence and proximate cause, the resolution of which requires the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances, cannot ordinarily be disposed of by summary judgment).

The District Court must consider all evidence in the record when reviewing a motion for summary judgment – pleadings, depositions, interrogatories, affidavits, etc. – and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

And the Court must consider the entire record and not just the evidence singled out by the parties. *Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). A District Court cannot weigh conflicting evidence to

---

[1] Decisions of the Fifth Circuit Court of Appeal issued prior to September 30, 1981 are binding precedent in this circuit. *See, Bonner v. City of Prichard, Ala.*, 661 F. 2d 1206 (11th Cir. 1981).

resolve factual disputes.  *Skop v. City of Atlanta, GA*., 485 F.3d 1130, 1140 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The parties do not dispute that Ms. Sutton slipped and fell in the Defendant's store.   CCTV video captured the incident.   (DE 31-2).   The parties dispute whether Wal-Mart had constructive notice of the smashed grape and grape innards that Ms. Sutton slipped on and fell.   The record evidence demonstrates that Ms. Sutton slipped and fell by the grape display in the produce section of Wal-Mart's store.   Wal-Mart's CCTV video, which begins over an hour before the incident, does not reveal a grape being dropped on the floor during that period of time, and it confirms that no Wal-Mart employee inspected the area for over an hour.   (DE 31-2).

The Plaintiff described the grape as dirty and smashed, and described a cart track and a footprint in the remains of the smashed grape.   The photographs taken by Wal-Mart demonstrate that the grape had been cleaved in half, and was flattened. The photographs of the floor depict a dried area of what is presumably the previously wet innards of the grape, with a streak, as if made by a shopping cart.

Under these circumstances, the district court erred when it entered summary judgment in favor of Wal-Mart and against Ms. Sutton.   Procedurally, the district court violated Federal Rule of Civil Procedure 56 and abundant authority on the

standard to be applied by a district court when viewing the facts on a motion for summary judgment. *See, e.g., Brady v. Carnival Corp.*, __ F.4th ___, 2022 WL 1420869 (11th Cir. 2022); *Carroll v. Carnival Corp.*, 955 F.3d 1260 (11th Cir. 2020); *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710 (11th Cir. 2019). The district court applied the exact opposite standard of review. It viewed the evidence in the light most favorable to the Defendant/movant, Wal-Mart, and against Ms. Sutton.

Summary Judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Here, a reasonable jury easily could reach a verdict for Ms. Sutton.

## **ARGUMENT**

I.   **THE SUMMARY JUDGMENT MUST BE REVERSED BECAUSE THE EVIDENCE PRESENTS GENUINE ISSUES OF MATERIAL FACT THAT WAL-MART HAD CONSTRUCTIVE NOTICE OF THE CRUSHED GRAPE ON ITS FLOOR, DUE TO (1) THE DETERIORATED APPEARANCE OF THE SMASHED GRAPE AND SURROUNDING AREA; (2) THE LACK OF ANY INSPECTION BY WAL-MART EMPLOYEES FOR UP TO AN HOUR BEFORE THE INCIDENT; (3) THE PRESENCE OF NEARBY EMPLOYEES WHO SHOULD HAVE, BUT DID NOT, DETECT THE DANGEROUS CONDITION; AND (4) THE EXISTENCE AND VIOLATION OF WAL-MART'S WRITTEN POLICY TO PLACE MATS ON THE FLOOR BELOW THE GRAPE BINS DUE TO THE TENDENCY OF GRAPES TO FALL TO THE FLOOR; AND BECAUSE THE DISTRICT COURT IMPERMISSIBLY APPLIED A FLORIDA PROCEDURAL RULE AGAINST STACKING INFERENCES WHICH THIS COURT HAS REJECTED.**

   A.   **The Appearance of the Foreign Substance Establishes Constructive Notice**

        i.   **Florida Transitory Foreign Substance Law Prior to *Owens***

In 2001 the Florida Supreme Court issued a landmark opinion addressing Florida foreign substance slip and fall law. *Owens v. Publix Supermarkets, Inc.*, 802 So.2d 315 (Fla. 2001).   *Owens* reversed two district court of appeal opinions which had affirmed directed verdicts for defendants in which supermarket shoppers slipped on brown or aged pieces of banana.   *See Owens v. Publix Supermarkets, Inc.*, 729 So.2d 449 (Fla. 5th DCA 1999) and *Soriano v. B & B Cash Grocery Stores, Inc.*, 757

13

So.2d 514 (Fla. 4ᵗʰ DCA 1999).   *Id.* at 318-319.   Those two decisions were before

the Supreme Court on conflict jurisdiction with   *Teate v. Winn-Dixie Stores, Inc.*,

524 So.2d 1060 (Fla. 3d DCA 1988).   The Supreme Court approved *Teate* and

quashed *Owens* and *Soriano*.

The Supreme Court began its analysis of existing Florida case law by noting

that constructive notice or knowledge may be established by circumstantial evidence

showing that:

> (1) "The dangerous condition existed for such a length of time that in
> the exercise of ordinary care, the premises owner should have known
> of the condition;" or (2) "The condition occurred with regularity and
> was therefore foreseeable."

*Id.* at 320 (citing *Brooks v. Phillips Watts Enter., Inc.*, 560 So.2d 339, 341 (Fla. 1ˢᵗ

DCA 1990).[2]

*Owens* then canvassed transitory foreign substance slip and fall cases which

the Florida Supreme Court had earlier decided, *e.g., Montgomery v. Florida Jitney*

*Jungle Stores, Inc.*, 281 So.2d 302 (Fla. 1973) and prior district court of appeal

decisions.   The Court observed that since *Montgomery*, "Florida's appellate courts

have struggled to determine whether in a given case sufficient evidence exists to

create a jury question on the issue of constructive notice."   *Id.* at 321.   "Some

appellate courts have concluded that the appearance of the transitory foreign

---

[2] Those two methods of establishing constructive notice are virtually identical to the
two methods codified in Section 768.0755, Fla. Stat.

substance may in itself be sufficient to create a jury question on constructive notice." *Id.* (and cases cited).   However, "where there was nothing about the description of the substance that would indicate the length of time it was on the floor, courts have precluded the jury from deciding the issue of negligence."  *Id*. at 321-22.

The Supreme Court held that the directed verdicts before it were erroneously entered because "evidence of the *deteriorated condition* of the foreign substance provided a sufficient basis for the plaintiffs in these cases to survive a directed verdict."  *Id*. at 329. (Emphasis added.) Specifically, the Florida Supreme Court held:

> The aging condition of the banana in each case gave rise to a reasonable inference that the aging occurred on the floor.  If the aging occurred on the floor, this would provide circumstantial evidence of constructive notice; that is, that it was on the floor a sufficient period of time so that the defendant knew or should have known of its existence.  As the Third District recognized in *Teate*, the mere fact that there may be alternative explanations inconsistent with the deterioration occurring on the floor does not render the circumstantial evidence of constructive knowledge fatally deficient. . . .   Rather, the condition of the substance gives rise to an inference that the aging occurred on the floor and allows the jury to make the ultimate factual determination as to whether the dangerous condition resulted from the store's failure to properly maintain and inspect the floors.  This analysis is consistent with our opinion in *Montgomery*. . . .

*Id.* at 329.   (citations omitted).

That portion of *Owens* remains the law today, albeit in a codified form. However, the Florida Supreme Court went further, and announced a dramatic change in then-existing foreign substance law.   The Florida Supreme Court placed the onus

on "modern day supermarkets, self-service marts, cafeterias, fast food restaurants and other business premises [to] be aware of the potentially hazardous conditions that arise from the way in which they conduct their business." *Id.* at 330. Thus, the Supreme Court shifted the burden to premises owners to establish that they exercised reasonable care under the circumstances. *Id*. at 331.

It was this latter holding which the Florida legislature changed, first in 2002, with the enactment of Section 768.010, Fla. Stat. (2002), and then in 2010 with the enactment of Section 768.0755, Fla. Stat. *See generally, Pembroke Lakes Mall Ltd. v. McGruder*, 137 So.3d 418, 423-24 (Fla. 4th DCA 2014).

### ii. Section 768.0755 Reinstated Florida Law as it Existed Prior to and as Applied in *Owens*

This action is governed by Fla. Stat. §768.0755, entitled "Premises Liability for Transitory Foreign Substances In A Business Establishment." The statute provides that "if a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Besides actual notice, the statute provides two distinct methods to establish constructive knowledge:

Constructive knowledge may be proven by **circumstantial evidence** showing that:

(a) The dangerous condition existed for such a length of time that, in

16

the exercise of ordinary care, the business establishment should have known of the condition;

**or**

(b) The condition occurred with regularity and was therefore foreseeable.

§768.0755(1)(a)(b).   (Emphasis added).

Section 768.0755, Fla. Stat., essentially reinstates slip and fall law in Florida as it existed before the Florida Supreme Court's dramatic and burden-shifting decision in *Owens*.   *Kenz v. Miami-Dade County*, 116 So.3d 461, 463 (Fla. 3d DCA 2013).

### iii.    Plaintiff's Personal Lack of Knowledge is Irrelevant

As has become the custom in these cases, Wal-Mart asserted (and the district court erroneously agreed) that it is entitled to summary judgment because the Plaintiff could not answer questions which no plaintiff could answer.   For instance, Wal-Mart asserted that the Plaintiff did not know how long the smashed grape and juice had been on the floor before she fell.   Logically, however, no plaintiff could know how long a substance upon which he or she slipped or tripped and fell had been on the floor, unless the plaintiff was present when the foreign substance was dropped or spilled on the floor, in which case presumably the plaintiff would not slip and fall on that substance of which the plaintiff had actual knowledge.   The same analysis applies to Wal-Mart's assertion that Plaintiff did not know how the

substance got on the floor. The Plaintiff's lack of knowledge of those two facts does little more than establish that the Plaintiff was legitimately surprised when she slipped due to the foreign substance.

The Florida Supreme Court recognized as much in *Owens*, 802 So.2d at 329 ("Neither Owens nor Soriano was in any position to know the circumstances that placed the piece of banana on the floor prior to her fall; nor was either one of them in any position to prove that the piece of banana was on the floor because of the negligence of store employees.")

In a recent decision denying a motion for summary judgment based upon the same Florida Statute, U.S. District Court Judge Roy K. Altman, commented upon a similar argument, explaining why evidence about the condition of the water or substance on the floor is more important than a plaintiff's lack of personal knowledge:

> It's no surprise that courts often rely on these little nuggets of circumstantial evidence. After all, a customer shopping in a store doesn't tend to notice the puddle before he slips on it. And, even if he had, he'd rarely have occasion to measure the amount of time that elapsed between the substance's appearance on the floor and his encounter with it.

*Torres v. Wal-Mart Stores East, LP*, 555 F.Supp.3d 1276, 1283, n. 8 (S.D. Fla. 2021).

*Torres* also noted:

When customers walk through a store – looking for products, filling

their carts, and (as here) wrangling their small children – they typically don't have the time (or the presence of mind) to ogle the ground for hazards.  Nor should they have to. These customers understandably trust Wal-Mart to keep its stores safe and its floors clean. And so, we find rather immaterial Torres's failure to spot the puddle sooner.

*Id.* at 1287.

### iv.    The Appearance of the Crushed Grape and Surrounding Area Establishes Constructive Notice

Testimony that the foreign substance on the floor had some characteristic which  suggested that it had been there for some period of time has **always** been sufficient evidence of notice under Florida law, both before and after the enactment of Florida Statute §768.0755.  *See, e.g., Montgomery v. Florida Jitney Jungles Stores, Inc.,* 281 So. 2d 302 (1973) (holding it was a jury question where plaintiff claimed  to  have slipped on a wilted and dirty leaf); *Cisneros v. Costco Wholesale Corp.*, 754 So.2d 819 (Fla. 3d  DCA 2000) (reversing summary judgment because the plaintiff testified that she observed "a few wheel tracks and several footprints had  been  made"  in  the  substance  in  which  she  slipped); *Norman v. DCI Biologicals Dunedin, LLC*, 301 So.3d 425 (Fla. 2d DCA 2020); *Williams v. Ryta Food Corp.*, 301 So.3d 339 (Fla. 3d DCA 2020); *Najeera v. Tropical Supermarket  Corp.*,  305  So.3d  639  (Fla.  3d  DCA  2020); *Newalk  v.  Florida Supermarkets,* 610 So. 2d. 528 (Fla. 3d DCA 1992) (holding that testimony of witness  who  noticed black oil sprinkles "that appeared old" was at least evidence

indicating the unidentified spots were present for a sufficient length of time for the owners in their exercise of reasonable care to have acted to remedy the condition *Gonzalez v. Target Corp.*, 2016 WL 2642103 (S.D. Fla. 2016) (plaintiff's testimony that "I slipped and fell on a *dirty*, slippery substance" sufficient to defeat summary judgment) (emphasis in original); *Garcia v. Wal-Mart Stores E., L.P.*, 2015 WL 898582, at 3 (M.D. Fla. Mar. 3, 2015) ("Circumstantial evidence of a substance's deterioration allows the inference that enough time had passed for a business owner to have constructive knowledge of the substance.").

Circumstantial evidence of constructive notice can be shown by testimony that a substance was dirty, trampled, **or** contained skid or scuff marks. *Woods v. Winn Dixie Stores, Inc.*, 621 So. 2d 710, 711-12 (Fla. 3d DCA 1993) ("Testimony of dirt, scuffing, **or** tracks in a substance generates sufficient inferences of constructive notice."). (Emphasis added.) *See also Winn Dixie Stores, Inc. v. Guenther,* 395 So.2d 244 (Fla. 3d DCA 1981); *Skipper v. Barnes Supermarket,* 573 So.2d 411 (Fla. 1st DCA 1991); *Garcia v. Wal-Mart Stores E., L.P.*, 2015 WL 898582, at 3 (M.D. Fla. Mar. 3, 2015) ("Intuitively, the condition of a substance left on a floor deteriorates over time; frozen foods melt, vegetables and **fruits are smashed or become dirty** and wilt, solid objects become scraped and scuffed, and liquids become soiled, smeared, **and show track marks and footprints**.") (Emphasis supplied). In *Woods*, the court reversed a judgment notwithstanding the

20

verdict for the defendant due to the plaintiffs' testimony that described the transitory substance as "'very dirty', 'trampled', 'containing skid marks, scuff marks[ ]'" even though the plaintiffs could not testify "who had caused the marks." 621 So. 2d at 711.

*Owens* holds that it is assumed that the grape that Plaintiff slipped on started clean and intact.   Conversely, Ms. Sutton testified that the crushed grape she slipped on was dirty, smashed, and had a track mark going through it. This testimony constitutes sufficient record evidence that the grape deteriorated while on the floor, and *standing alone* was sufficient under Florida law to create a question of fact that the substance had been on the floor long enough for Wal-Mart to have constructive knowledge of it, defeat summary judgment, and permit the Plaintiff to present her claim to a jury.

As an example of how the district court viewed the evidence in the light most favorable to the Defendant, rather than the non-movant Plaintiff, the district court concluded that because the video did not prove that the two shoppers seen around the grape aisle in the hour preceding the Plaintiff's fall actually dropped a grape, the Plaintiff's theory that one shopper may have dropped the grape was pure speculation. (DE 54, p. 4-5).   The district court concluded that the video did not show either customer dropping or spilling anything on the floor.   (*Id.* at p. 5).   So then, it is equally possible that the grape had been there *longer* than the length of the video,

over an hour.   *That* is the inference that the district court needed to draw on behalf of the Plaintiff under summary judgment rules.   *See, e.g., Carroll v. Carnival*.

A second example is the district court's treatment of the Plaintiff's testimony that the footprint she saw might have been her own.   She initially testified that it must have been her own, but then clarified that it was equally as likely that it was not her own.   (DE 31-6, p. 110).   However, the district court credited only her assumption that it was her own.   (DE 54, p. 2).   This is improper.   *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) ("In our view, the district court erred by crediting some statements by Mrs. Carroll – which favor Carnival's open and obvious argument – over her other statements that she was forced to follow behind her husband due to the layout of the chairs and the narrowness of the walkway.")

Wal-Mart and the district court relied upon cases where there was **no** evidence to indicate that the foreign substance had been on the floor for **any** length of time. *See, e.g., Delgado v. Laundromax, Inc.*, 65 So.3d 1087 (Fla. 3d DCA 2011). There the plaintiff slipped on a clear liquid immediately "upon walking through the doorway of the defendant's premises. . ."   *Id*. at 1087.   The substance "looked like water" and was "transparent." However, there was no evidence that the liquid had been on the floor for any period of time.   The court specifically distinguished its

prior case law which, like the present case, involved testimony demonstrating the substance had been on the floor for some period of time. *Id.* at 1090.

**B.    Wal-Mart's Failure to Inspect the Area for an Hour or Longer is Evidence of Constructive Notice**

A plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019).

This Court should reverse the summary judgment because there is a genuine issue of material fact in the record there had been no inspection of the area for over an hour.   Florida law provides that:

> [T]he rule imposing liability on a proprietor of a public building, on the basis of constructive notice, creates a duty of making reasonable inspections of the portions of its premises that are open to his customers.   It follows then that evidence that no inspection had been made during a particular period of time prior to an accident may warrant an inference that the dangerous condition existed long enough so that the exercise of reasonable care would have resulted in discovery.

*Jenkins v. Brackin*, 171 So.2d 589, 591 (Fla. 2d DCA 1965).   *Jenkins* was quoted with approval in *Montgomery v. Florida Jitney Jungle Stores, Inc.*, 281 So.2d 302, 303 (Fla. 1973).   In *Jenkins*, the court reversed a summary judgment because "there was a period between 15 and 20 minutes immediately prior to the accident that the defendant had not examined the floor in front of the vegetable bin," where the plaintiff slipped on a green bean.   There was no other evidence of the green bean

being in a disfigured condition, or having been stepped upon.

Florida law holds that where the Plaintiff can create a genuine issue of material fact that the foreign substance could have been on the floor for 15 to 20 minutes, or longer, summary judgment is not appropriate. *See, e.g., Winn Dixie Stores, Inc. v. Williams*, 264 So.2d 862, 864 (Fla. 3d DCA 1972); *Little v. Publix Supermarkets, Inc.*, 234 So.2d 132, 134 (Fla. 4th DCA 1970); *See also Thomas v. NCL (Bahamas), Ltd.*, 203 F.Supp.3d 1189, 1193 (S.D. Fla. 2016) (acknowledging Florida's 15-20 minute rule).

In *Teate v. Winn Dixie Stores, Inc.*, 524 So.2d 1060, 1061 (Fla. 3d DCA 1988), the court held that a jury could conclude that the defendant was negligently monitoring the area because no one had been through the area in at least 15 minutes. *See also Rubiano-Pagle v. Target Corp.*, 2012 WL 13019198, at *3 (S.D. Fla. 2012). *See also, Gerard v. Eckerd Corp.*, 895 So.2d 436 (Fla. 4th DCA 2005) (jury question as to whether the inspection schedule was reasonable).

In *Winn Dixie Stores, Inc. v. Williams*, the court held:

> The manager stated that he had gone through the aisle in which plaintiff fell 15 to 20 minutes before the accident occurred.  We conclude, therefore, that the substance was in the aisle for 15 to 20 minutes prior to the accident.  That is not to say that it could not have been there longer if the manager had not seen it during his inspection.

*Id.* at 864.  In *Williams,* the court concluded that the 15 to 20 minutes was "sufficient for defendants to be charged with knowledge of the condition and a

reasonable time in which to correct it." *Id.  See also Goodman v. D.T.G. Operations*, 2016 WL 759299 (S.D. Fla. 2016) (Denying summary judgment, relying upon *Williams*); *James v. Target Corp.*, 2015 WL 1197775 (S.D. Fla. 2015) (Denying summary judgment, relying upon *Williams*).  *See also, Berman v. Target*, 2016 WL 4531738, *5 (S.D. Fla. 2016) (denying summary judgment where "Target admits that the last safety sweep before Mr. Berman fell may have occurred up to a half an hour before Mr. Berman fell.")

Thus, both Florida and federal decisions establish that the period of no inspection necessary to create a genuine issue of material fact on constructive notice can be as short as 15-20 minutes.  *Thomas v. NCL (Bahamas), Ltd.*, 203 F.Supp.3d 1189 (S.D. Fla. 2016) (citing *Hill v. Ross Dress for Less, Inc.*, 2014 WL 6190435 at *4 (S.D. Fla. 2014) (citing Florida Statute §768.0755).  Here, there was evidence that the grape and/or grape juice was on the floor at least an hour, viewing the evidence in the light most favorable to the Plaintiff.

The district court ignored all of this authority, relying instead upon *Miller v. Big C Trading, Inc.*, 641 So.2d 911 (Fla. 3d DCA 1994) and *Wal-Mart Stores, Inc. v. King*, 592 So.2d 705 (Fla. 5th DCA 1991) for the erroneous proposition that the presence of employees in the vicinity does not create an issue of material fact on constructive notice.  Those intermediate appellate court decisions are distinguishable.  In *Miller* there was no evidence to indicate that the grape had been

on the floor for any length of time such as thawing, cart tracks, or footprints or other indicia of constructive notice. *Id.* at 911 (quoting *Broz v. Winn-Dixie Stores, Inc.*, 546 So.2d 83 (Fla. 3d DCA 1989)). Thus, in *Miller*, the court held that with no other evidence of the length of time that the foreign substance had been on the floor, the presence of employees alone would not establish constructive notice. The same is true in *King*, where there was no evidence of the exact nature of the substance, how it got on the floor, or how long it had been there. *See Owens, supra. Kind* and *Miller* were effectively abrogated by the Florida Supreme Court in *Owens*.

Here we know that the substance was a smashed grape, and grape juice, that it must have fallen from the grape bin above it, and that it had been on the floor long enough to be dirty, smashed, and have a cart mark going through it. The existence of these indicia of the length of time the foreign substance had been on the floor easily distinguishes this case from *King and Miller*, and the district court erred by relying upon them.

### C.    The Presence of Wal-Mart Employees in the Immediate Vicinity of the Foreign Substance Establishes Constructive Notice

It has long been the law that the presence of employees near a dangerous condition where a plaintiff slips and falls is sufficient evidence of constructive notice to defeat a motion for summary judgment. *See Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three

employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [defendant] exercised reasonable care under the circumstances to maintain its premises in a safe condition.") *Markowitz,* like this case, involved a slip and fall on a grape. *See also Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 Fed.Appx. 531 (11th Cir. 2018).

In *Aponte,* this Court held that the district court erroneous determined that *Royal Caribbean* did not have actual or constructive notice of a puddle of soap in one of its bathrooms, and that while the Plaintiff saw a crewmember in the restroom, there was no evidence establishing whether the puddle was on the floor while the crewmember was there or whether the crewmember knew of the puddle or the soap bottle. *Id.* at 536. This Court reversed, concluding there were genuine issues of material fact because a reasonable fact finder could conclude that the crewmember knew or should have known about the puddle of soap. *Id.* at 535. *See also, Plott v. NCL America, LLC*, 786 Fed.Appx. 199 (11th Cir. 2019), where this Court reversed a summary judgment and criticized the district court for discounting similar evidence of the presence of nearby crewmembers.

Although there were two employees who passed nearby the grape aisle in the hour before Ms. Sutton's slip and fall, neither appeared to inspect the floor. *See, e.g., Doudeau v. Target Corp.*, 572 Fed.Appx. 970, 972 (11th Cir. 2014) ("A review of the surveillance video shows [employee] walking through the area but his gaze is

not on the floor but instead at the customers . . . .").

### D. The District Court Improperly Used Florida's Inapplicable Procedural Rule Against Stacking Inferences

The district court erred as a matter of law in rejecting the Plaintiff's evidence because, as the district court erroneously concluded, "Plaintiff's argument relies on a series of inferences." (DE 54, p. 4). The district court erred because, although Florida's substantive statute applies, Florida's procedural rule against stacking inferences (often misapplied even by Florida courts) does not apply. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1325 (11th Cir. 1982); *Berbridge v. Sams East, Inc.*, 728 Fed.Appx. 929 (11th Cir. 2018) ("We do not apply state law rules against 'pyramiding' or 'stacking' inferences. Nor are we bound by state court decisions on issues of evidentiary sufficiency for trial under state court summary judgment rules."). Respectfully, it was the district court which was guilty of impermissibly stacking inferences – and doing so in favor of the movant and against the non-movant!

Ironically, the district court relied upon *Daniels* for the proposition that the Plaintiff was engaging in speculation. The district court erred because Ms. Sutton is not relying upon a guess or a possibility. The standard for determining whether an inference is allowable is generally whether it is reasonable, whether it is one that

"reasonable fair minded [persons] in the exercise of impartial judgment" might draw from the evidence.   *Daniels*, 692 F.2d at 1326.

More important, "an inference is not unreasonable simply because it is based in part on conjecture, for an inference by definition is at least partially conjectural." *Id*.   In *Daniels*, this Court held there was sufficient evidence from which a jury could infer that Daniels exited the nursing home through the negligence of the defendant.   *Id.*   The verdict was reversed only because there was no evidence of *causation*.   Here, however, there is no issue concerning causation.   It is undisputed that the Plaintiff's injury was caused by her slip and fall at Wal-Mart.   Thus, the district court's "inference stacking" analysis (DE 54, p. 4), which was the primary basis upon which summary judgment was entered, was erroneous as a matter of law.

Here, it is not speculative at all that the Wal-Mart employee could have seen the crushed grape and tracks. But the trial court relied upon *Encarnacion v. Lifemark Hospitals of Florida*, 211 So.3d 275 (Fla. 3d DCA 2017), which is easily distinguished from this case.

*Encarnacion* involved a slip and fall at a hospital, not a grocery store.   The plaintiff slipped and fell on a substance *at that very moment* being sprayed by a **non-hospital employee** from a spray bottle in a hallway.   *Id.* at 276.   She tried to walk around the area where the person was cleaning but slipped and fell.   In a Statement of Claim made with the County and in written interrogatories she conceded that she

29

fell on this just-sprayed liquid.   *Id*. at 276-277.

*Encarnacion* held there was no evidence in the record to suggest the existence

of the foreign substance on the floor was known to the hospital *because it had just*

*been sprayed*:

> In fact, if Ms. Encarnacion's testimony is believed, the liquid was being
> deposited on the floor by a non-hospital employee at the same time Ms.
> Encarnacion fell.

*Id.*

The Second District distinguished *Encarnacion* in *Norman v. DCI Botanicals*

*Dunedin, LLC,* 301 So.3d 425 (Fla. 2d DCA 2020), precisely because, unlike

*Encarnacion*, "the summary judgment evidence in this case did not foreclose the

possibility that the water had been on the floor for a prolonged period of time."

*Norman*, *Id.* at 430.

In *Norman* the court explained why the plaintiff was not stacking inferences,

but was rather supporting two separate inferences:

> From direct evidence that there was dirty water on the floor with muddy
> footprints and a separately located skid mark, Norman proposed an
> inference that the dirt, mud, and marks were deposited onto the floor
> sometime sufficiently prior to his fall by one or more other individuals
> who indicate that the Plasma Defendants should have detected it.   He
> also adduced circumstantial evidence to support an inference that no
> inspection of the men's donor bathroom was conducted during the
> entirety of the busy day of Norman's fall.   These are two separate
> inferential premises to support the ultimate conclusion that the liquid in
> the bathroom "existed for such a length of time that, in the exercise of
> ordinary care, the business establishment should have known of the
> condition."   Neither relies on the other.   Because they were not

stacked one on top of another, neither of the inferences needs to be proven "to the exclusion of all other reasonable inferences."

*Id.* at 431 (quoting *Wilson-Greene v. City of Miami*, 208 So.3d 1271, 1275 (Fla. 3d DCA 2017)).

Likewise, in an opinion issued long before either *Wilson-Greene* or *Encarnacion*, the Third District properly rejected an inference stacking argument:

> Outback argued below and on this appeal that the final summary judgment was entirely proper on the issue of its constructive notice of the smashed potato on the floor where the only reasonable inference to be drawn from its appearance is that Ms. Colon herself mashed and dirtied it when she stepped on it. We disagree. We believe than an equally compelling inference from the dirty appearance of the potato is that it had gone undetected on the floor for a sufficient period of time to place Outback on constructive notice. Given these competing inferences as to Outback's constructive notice of the hazardous condition of its premises as alleged, we conclude that summary judgment in this cause was error.

*Colon v. Outback Steakhouse of Florida, Inc*, 721 So.2d 769, 772 (Fla. 3d DCA 1998).

In *Wilson-Greene*, another non-supermarket case, the plaintiff slipped on a green liquid theorized to be green pea soup, in an office building. The court affirmed the summary judgment. Although there was a restaurant in the same building, there was no evidence it was serving green pea soup that day. The Court held that it was necessary to stack inference upon inference to establish that the substance was a) green pea soup and b) that it had originally been hot. Here we are dealing with a smashed grape (DE 41-3) located directly below a grape bin which

clearly was not in that condition when it was in the grape bin.

The plaintiff in *Wilson-Greene* relied upon *Teate v. Winn Dixie Stores, Inc.*, 524 So.2d 1060 (Fla. 3d DCA 1988) in which the Court rejected the inference stacking defense regarding water on the floor around frozen peas. The dispute was over whether the water was there because the peas had been on the floor long enough for the package to melt, or from "permafrost" or ice crystals on the bag of peas that instantly melted when it hit the floor. *Id*. *Wilson-Greene* distinguished *Teate* upon the following analysis:

> We conclude that where melting substances are involved, there is no need to infer the substance was previously frozen. Logic tells us that is a given. In the instant case, the jury would need to infer that the substance was hot prior to spilling on the floor and infer from this that it was on the floor a sufficient amount of time for it to have cooled. This requires a jury to impermissibly stack inferences.

*Id.* at 1276. *Teate* was approved of in *Owens*.

Here the jury would not need to infer that the grape started in an uncrushed condition. *Owens, supra*. Thus, there is no stacking of inferences involved here. This case is governed by *Teate*, not *Wilson-Greene*.

*Wilson-Greene* quoted *Teate* with approval. 208 So.3d at 1275-76. The following quote from *Teate* is paraphrased to fit the facts of our case:

> Since it was established that there was [a crushed grape] on the floor, it was completely within the jury's province to decide why the [crushed grape] was there. The jury needed to draw only one inference from direct evidence to reach a decision as to the defendant's constructive notice of the condition. It was entitled to believe [Ms. Sutton's

32

testimony that the grape was crushed and had tracks running through it]
and to select the inference that it did.

*Id. at 1061 (citations omitted).*

That *Encarnacion* and *Wilson-Greene* did not involve supermarkets is important. As the Court noted in *Encarnacion*, "[a]s in *Wilson-Greene*, Hospital Housekeeping Systems had no duty to constantly patrol or supervise the area where the accident occurred." *Encarnacion*, 211 So.3d at 279. Here Wal-Mart not only has a duty to constantly patrol or supervise the area where the accident occurred, but its policies acknowledged that duty. A grocery store is a different type of business premises than an office building (*Wilson-Greene*), or a hospital (*Encarnacion*), or a laundromat (*Delgado*). Spills are a common occurrence in grocery stores, unlike office buildings, hospitals, or laundromats. *See, McCarthy v. Broward College*, 164 So.3d 78, 81 (Fla. 4th DCA 2015) distinguishing a college campus from a grocery store which "human experience tells us is filled with products that could easily fall, spill, or break and create a hazard."

There is no evidence that the Wal-Mart employees followed their own clean-it-if-you-see-it inspection policy during the over one hour between when the video began and the Plaintiff's slip and fall is evidence of constructive notice that the dangerous condition existed long enough to invite corrective action. (DE 31-2). *McCarthy*, *supra.* This is yet another reason the trial court erred in granting summary judgment. *See also, Williams v. Ryta Food Corp.*, 301 So.3d 339, 342, n.

3 (Fla. 3d DCA 2020) (reversing summary judgment and noting that the area had not been inspected in the 20 minutes before the incident, citing *McCarthy* in support).

*Delgado*, *Encarnacion*, and *Wilson-Greene* are exceptional cases. The general rule, in *most* slip and fall cases, is that granting summary judgment for the defendant is inappropriate given the factual nature of these disputes. Conversely, when "the record is devoid of any evidence suggesting that the Appellee had *any* notice – either actual or constructive – of the [substance] on the floor," summary judgment may be granted. *Kenz, supra.*, at 466. (Emphasis in original). Here, the record contains ample evidence of both actual and constructive notice.

### E.    The Frequency that Produce Fell on the Floor Establishes Foreseeability

As we noted above, Florida's slip and fall statute provides two general ways to establish constructive notice: (subsection (1)(a)) based on the amount of time the substance was present; and (subsection (1)(b)) based upon foreseeability due to regularity. *See, e.g., Seaberg v. Steak N'Shake Operations, Inc.*, 697 Fed.Appx. 941, 943 (11th Cir. 2017) ("these kinds of spills occurred with such regularity that SNS would have been on constructive notice."); *Feris v. Club Country of Fort Walton Beach, Inc.*, 138 So.3d 531, 535 (1st DCA 2014) (evidence that drinks were often spilled on dance floor could establish constructive notice under subsection (1)(b)).

During discovery Wal-Mart produced its safety manual which includes the

following instruction regarding placing mats in the area where grapes are sold:

## Department Safety Solutions 

- Check for the presence of and condition of mats under fish tanks.
- Interlock large bags of pet food on stackbases when merchandising.

**Produce**
- Keep cooler floors free of debris and water to help prevent falls.
- Place a mat in front of small loose fruits such as grapes and cherries.
  - Ensure mats lay flat.
- Zone the bulk nuts frequently.
- Adjust misters to prevent wet floors.

(DE 41-5, WALMART/Sutton 0023, Department Safety Solutions, p. 14 of 18).
(Highlighting added).

Wal-Mart's written policy reflects that it is necessary to place mats below the
grape section precisely because grapes can easily fall to the floor and create a slipping
hazard.   Wal-Mart's safety employee Mr. Fookes said it is necessary to place mats
"especially [under] the grapes."   (DE 41-4, p. 10 of 36).   He recognized that
"everybody is always putting their hands in there, you know, in case that slips out or
something."   (*Id.*)   To him, placing a mat below the grape bin is "just logical".   (DE
41-4, p. 11 of 36).

As this Court's precedent establishes, taking such action (even if, the mat was
not placed, in violation of Wal-Mart's safety rules) is sufficient evidence of corrective
action to defeat a summary judgment on constructive notice.   *See, e.g., Brady v.*

35

*Carnival Corp.*, __ F. 4th __, 2022 WL 1420869 (11th Cir. 2022); *Carroll v. Carnival Corp.*, 955 F.3d 1260 (11th Cir. 2020); *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710 (11th Cir. 2019).[3]

Thus, the district court also erred by granting summary judgment notwithstanding evidence that produce frequently fell on the floor at the store.

## CONCLUSION

For the foregoing reasons, the Appellant, VANESSA SUTTON, respectfully requests this Court reverse and remand this matter to the district court for trial.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).   This brief contains 9,954 words.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other

---

[3] With limited exceptions not applicable here, this Court's maritime slip and fall authority is no different from either its common law or statutory cousin, Florida Statute §768.0755.   *See Brady, supra,* at *2, referring to maritime law as a "cousin of the common law."

authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> **PHILIP D. PARRISH, P.A.**
> *Counsel for Appellant*
> 7301 SW 57th Court, Suite 430
> Miami, Florida 33143
> Tel: 305-670-5550/Fax: 305-670-5552
> Email: phil@parrishappeals.com
> betty@parrishappeals.com
>
> By: ___*/s/ Philip D. Parrish*___
> Philip D. Parrish, Esquire
> Florida Bar No. 0541877

## SERVICE LIST

Peter Hunt, Esq.
Aaron S. Feuer, Esq.
**Rubenstein Law, P.A.**
*Counsel for Plaintiff*
250 S. Australian Avenue, Suite 1000
W. Palm Beach, FL   33401
Tel. 305-661-6000
Fax 305-670-7555
Email: phunt@rubensteinlaw.com
        ahertz@rubensteinlaw.com
        eservice@rubensteinlaw.com
        aaron@rubensteinlaw.com

Darin A. DiBello, Esq.
Spencer Woodstock, Esq.
**Fasi & DeBello, P.A.**
*Counsel for Defendant*
150 S.E. 2nd Avenue, Suite 1010
Miami, FL   33131
Tel. 305-537-0469
Fax 305-503-7405
Email: dibello@fasidibellowlaw.com
        woodstock@fasidibellowlaw.com
        blakewindhorst@fasidibellowlaw.com
        pleadings@fasidibellowlaw.com